UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

| | |
|---|---|
| JANAYA HARRIS ) | Case No. _____ |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | |
| FULTON, FRIEDMAN & GULLACE, ) | |
| LLP, MIDLAND FUNDING LLC, ) | |
| MIDLAND CREDIT MANAGEMENT, ) | |
| INC., and ENCORE CAPITAL GROUP, ) | |
| INC. ) | **Jury Trial Demanded** |
| ) | |
| Defendants. ) | |
| _____ ) | |

## NATURE OF ACTION

1. This action is brought under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, and/or where Defendants transact business in this district.

## PARTIES

4. Plaintiff, Janaya Harris, is a natural person who at all relevant times resided in Lanham, Maryland.

5. Ms. Harris's obligation, or alleged obligation, owed or due, or asserted to be owed or due Midland Funding LLC, arises from a transaction or transactions in which

the money, property, insurance, goods, and/or services that are the subject of the transaction(s) were incurred primarily for personal, family, or household purposes.

6. Specifically, Ms. Harris's alleged obligation arises from a personal credit card issued by HSBC Bank Nevada, N.A. ("HSBC") used for consumer purchases such as gasoline, clothing, groceries, and other personal items.

7. Ms. Harris is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8. Defendant, Fulton, Friedman & Gullace, LLP ("FFG"), is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Ms. Harris, as defined by 15 U.S.C. § 1692a(5).

9. FFG is a limited liability partnership with its principal offices at 500 First Federal Plaza, Rochester, New York.

10. FFG is registered to do business, and does business, in this district.

11. FFG is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

12. Defendant, Encore Capital Group, Inc. ("Encore"), is a publicly traded Delaware corporation which at all relevant times was engaged in the business of attempting to collect a "debt" from Ms. Harris, as defined by 15 U.S.C. § 1692a(5).

13. Encore is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14. Encore's principal executive offices are located at 8875 Aero Drive, Suite 200, San Diego, California.

15. Defendant, Midland Funding LLC ("Midland Funding"), is a Delaware limited liability company with its principal place of business in San Diego, California.

16. Midland Funding is registered to do business, and does business, in this district.

17. Midland Funding is a wholly-owned subsidiary of Encore.

18. Midland Funding is in the business of taking title to and collecting delinquent debts originally owed to other parties.

19. Midland Funding is the current owner and assignee of all the rights, title, and interest in Ms. Harris's account with HSBC.

20. Midland Funding purchased Ms. Harris's account from HSBC via a Receivables Purchase Agreement dated April 16, 2009.

21. Midland Funding at all relevant times was engaged in the business of attempting to collect a "debt" from Ms. Harris, as defined by 15 U.S.C. § 1692a(5).

22. Midland Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

23. Defendant, Midland Credit Management, Inc. ("Midland Credit Management") was the servicer of Ms. Harris's account, which was purchased by Midland Funding.

24. Midland Capital Management's principal executive offices are located at 8875 Aero Drive, Suite 200, San Diego, California, the same address as Encore.

25. Midland Credit Management at all relevant times was engaged in the business of attempting to collect a "debt" from Ms. Harris, as defined by 15 U.S.C. § 1692a(5).

26. Midland Credit is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

27. FFG, Encore, Midland Funding, and Midland Credit Management acted jointly and in concert to collect a debt from Ms. Harris.

## FACTUAL ALLEGATIONS

28. As part of its general practices, Encore raises capital from third party financial institutions and investors to fund massive purchases of deeply discounted charged-off consumer receivable portfolios from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios.

29. Encore manages the collection of the charged-off consumer debts that it purchases through its subsidiary entities. Midland Funding takes title to the charged-off debts that Encore purchases and places the charged-off debts with Midland Credit Management for collection pursuant to a written servicing agreement. Midland Credit Management places charged-off accounts with FFG for collection pursuant to a written collection agreement.

30. Encore is involved in every stage of the collection process, including legal outsourcing, continuously refining its analysis to determine the most effective collection strategy for each account.

31. In accordance with its general practices, Encore secured funds from investors and lenders for the purpose of purchasing the portfolios of charged-off consumer receivables which included the alleged debt of Ms. Harris (the "Debt").

32. Encore oversaw the decision to obtain the Debt, made the decision to obtain the Debt, and oversaw the collection of the Debt pursuant to its general practices.

33. Prior to the purchase of the Debt, Encore prepared quantitative analyses based on extracting customer level data from external sources, other than the issuer, to analyze the potential collectability of the portfolios.

34. Encore also analyzed the portfolios by comparing them to similar portfolios previously acquired and serviced by Encore and its subsidiaries.

35. Members of Encore's management performed qualitative analyses of other matters affecting the value of the portfolios, including a review of the delinquency, charge off, placement, and recovery policies of the originator as well as the collection authority granted by the originator to any third party collection agencies, and, if possible, a review of their recovery efforts on the particular portfolios.

36. Once the evaluations were completed, Encore's Investment Committee, comprised of various members of its senior management, discussed the findings and decided to purchase the portfolios which included the Debt.

37. Once purchased, Encore managed and exercised material control over many aspects of the collection process of the Debt, including legal outsourcing, pursuant to its general practices.

38. Encore manages the collection of the Debt through its subsidiary entities.

39. Encore refers to Midland Funding as a "debt-owning company" within the Encore debt-collection enterprise.

40. Pursuant to Encore's general practices, Midland Funding took title to the Debt following their purchase by Encore.

41. Encore refers to Midland Credit Management as a servicing company within the Encore debt-collection enterprise.

42. Under contract with Encore and in accordance with Encore's general practices, Midland Funding entered into servicing agreements (the "Servicing

Agreements") with Midland Credit Management, pursuant to which Midland Credit Management became responsible for managing and servicing the collection of the Debt.

43. The terms of the Servicing Agreements contain specific instructions, directives, limitations, and multiple requirements concerning Midland Credit Management's authority concerning Midland Funding's placement of the Debt with Midland Credit Management for collection.

44. The Servicing Agreements grant Midland Credit Management significant power and authority to conduct and manage the collection of the Debt, including, without limitation, the commencement of legal proceedings in Midland Funding's name.

45. FFG is a law firm that represents Midland Funding under contract with Midland Credit Management.

46. The Servicing Agreements grant Midland Credit Management the ability to outsource collection of the Debt to FFG pursuant to written collection agreements between Midland Credit Management and FFG (the "Collection Agreements").

47. Midland Credit Management retained FFG to render legal services, including filing lawsuits, to collect the Debt on behalf of Encore, Midland Funding, and Midland Credit Management pursuant to the Collection Agreements.

48. Encore's Legal Outsourcing Department oversaw and managed the legal outsourcing of the Debt to FFG, pursuant to its general practices.

49. Through the Collection Agreements, Encore, Midland Funding, and Midland Credit Management impose exacting standards concerning the manner in which FFG is required to perform collection activities on the Debt on behalf of, and at the direction of, Midland Credit Management, Midland Funding, and Encore.

50. The Collection Agreements govern and control the manner in which FFG performs debt-collection services related to the Debt on behalf of, and at the express direction of, Midland Credit Management, Midland Funding, and Encore.

51. The Collection Agreements provide for Midland Credit Management's exercise of material control over almost every aspect of FFG's collection of the Debt.

52. Midland Credit Management has created a "Legal Outsourcing Firm Training Manual," which it has provided to FFG for use in collecting the Debt pursuant to the Collection Agreements.

53. Among many other requirements, the Collection Agreements mandate that FFG abide by, and conduct its debt-collection operations in a manner consistent with, the Midland Account Handling Procedures.

54. The Midland Account Handling Procedures may be modified by Midland Credit Management from time-to-time in its sole and absolute discretion.

55. The Collection Agreements contain stringent daily reporting requirements pursuant to which FFG makes daily reports consisting of all information regarding any activity that occurs during that work day on any one of the accounts for the Debt, including but not limited to, communications or attempted communications between the FFG and consumer debtors or third parties.

56. The Collection Agreements name Midland Funding and Encore as third-party beneficiaries in relation to collection of the Debt.

57. The Collection Agreements require that, in obtaining insurance related to its collection of the Debt, FFG must name Midland Funding and Midland Credit Management as loss payee in its insurance policies.

58. Encore's management is responsible for setting the strategic direction and managing all legal outsourcing operations and personnel, driving process improvements, and for ensuring that FFG is competitively collecting the Debt.

59. Encore's Head of Legal Outsourcing oversees all Legal Outsourcing teams across the company, providing essential leadership and staff development consistent with overall company objectives and goals for collecting the Debt.

60. Encore's and Midland Credit Management's Director of Legal Outsourcing and Manager of Legal Outsourcing monitor and control the day-to-day operations of FFG in collecting the Debt pursuant to the Collection Agreements.

61. Encore pays a fee to FFG based on an established fee schedule for FFG's collection of the Debt, as further defined in the Collection Agreements.

62. FFG, Encore, Midland Funding, and Midland Credit Management use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collect or attempt to collect, directly or indirectly, debts once owed or due, or asserted to be once owed or once due another.

63. In connection with the collection of the Debt—which Encore, Midland Funding, and Midland Credit Management outsourced to FFG for collection pursuant to Encore's general practices—FFG, itself and on behalf of Encore, Midland Funding, and Midland Credit Management, sent Ms. Harris an initial written communication dated March 19, 2012.

64. The March 19, 2012 communication stated in relevant part:

> Unless you notify this office, in writing, within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this

>office will assume that the debt is valid.  If you notify us within 30 days from the date you receive this notice, this office will obtain verification of the debt or a copy of the judgment and will mail a copy of said verification or judgment to you.

*See* March 19, 2012 correspondence, attached as Exhibit A.

65. As a result of its status as a "debt collector" as defined by the FDCPA, Encore is vicariously liable for the improper collection activities of FFG—the debt collector who at all relevant times acted on Encore's behalf to collect Ms. Harris's debt pursuant to Encore's general outsourcing practices.

66. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Funding is vicariously liable for the improper collection activities of FFG—the debt collector who at all relevant times acted on Midland Funding's behalf to collect Ms. Harris's debt, pursuant to Encore's general outsourcing practices.

67. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Credit Management is vicariously liable for the improper collection activities of FFG—the debt collector who at all relevant times acted on Midland Credit Management's behalf to collect Ms. Harris's debt, pursuant to Encore's general outsourcing practices.

68. FFG acted as an agent of Encore, Midland Funding, and Midland Credit Management at all relevant times in communicating with Ms. Harris in connection with FFG's attempts to collect the Debt pursuant to Encore's general outsourcing practices.

### COUNT I—VIOLATION OF 15 U.S.C. § 1692g(a)(3)
### FFG

69. Ms. Harris repeats and re-alleges each and every factual allegation above.

70. The FDCPA at 15 U.S.C. § 1692g(a)(3) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> \*\*\*
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector….

71.  FFG violated 15 U.S.C. § 1692g(a)(3) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that unless she disputes the validity of the alleged debt, or any portion thereof, within thirty days after receipt of the initial communication, the debt will be assumed valid.

72.  FFG's March 19, 2012 initial communication failed to meaningfully convey to Ms. Harris the notice required by 15 U.S.C. § 1692g(a)(3) because it would lead the least sophisticated consumer to believe that the validity of the Debt could only be disputed in writing.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that FFG violated 15 U.S.C. § 1692g(a)(3);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e)  Awarding such other and further relief as the Court may deem just and proper.

### COUNT II—VIOLATION OF 15 U.S.C. § 1692g(a)(3)
### MIDLAND FUNDING

73.  Ms. Harris repeats and re-alleges each and every factual allegation above.

74.  FFG violated 15 U.S.C. § 1692g(a)(3) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that unless she disputes the validity of the alleged debt, or any portion thereof, within thirty days after receipt of the initial communication, the debt will be assumed valid.

75.  Midland Funding, by virtue of its status as a "debt collector" under the FDCPA, is vicariously liable for the actions of FFG, the debt collector it retained to collect the Debt from Ms. Harris on its behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a)  Adjudging that Midland Funding violated 15 U.S.C. § 1692g(a)(3);

b)  Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d)  Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e)  Awarding such other and further relief as the Court may deem just and proper.

### COUNT III—VIOLATION OF 15 U.S.C. § 1692g(a)(3)
### MIDLAND CREDIT MANAGEMENT

76.  Ms. Harris repeats and re-alleges each and every factual allegation above.

77. FFG violated 15 U.S.C. § 1692g(a)(3) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that unless she disputes the validity of the alleged debt, or any portion thereof, within thirty days after receipt of the initial communication, the debt will be assumed valid.

78. Midland Credit Management, by virtue of its status as a "debt collector" under the FDCPA, is vicariously liable for the actions of FFG, the debt collector it retained to collect the Debt from Ms. Harris on its behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that Midland Credit Management violated 15 U.S.C. § 1692g(a)(3);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e) Awarding such other and further relief as the Court may deem just and proper.

**COUNT IV—VIOLATION OF 15 U.S.C. § 1692g(a)(3)**
**ENCORE**

79. Ms. Harris repeats and re-alleges each and every factual allegation above.

80. FFG violated 15 U.S.C. § 1692g(a)(3) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that

unless she disputes the validity of the alleged debt, or any portion thereof, within thirty days after receipt of the initial communication, the debt will be assumed valid.

81. Encore likewise is vicariously liable for the actions of FFG, the debt collector that its subsidiaries Midland Funding and Midland Credit Management retained to collect the Debt from Ms. Harris on their behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that Encore violated 15 U.S.C. § 1692g(a)(3);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e) Awarding such other and further relief as the Court may deem just and proper.

**COUNT V—VIOLATION OF 15 U.S.C. § 1692g(a)(4)**
**FFG**

82. Ms. Harris repeats and re-alleges each and every factual allegation above.

83. The FDCPA at 15 U.S.C. § 1692g(a)(4) provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

\*\*\*

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is

disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector….

84.     FFG violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that a dispute of the debt, or any portion thereof, must be made in writing in order to require FFG to obtain verification of the alleged debt or a copy of a judgment against Ms. Harris and mail the same to her.

85.     FFG's March 19, 2012 initial communication failed to meaningfully convey to Ms. Harris the notice required by 15 U.S.C. § 1692g(a)(4) because it would lead the least sophisticated consumer to believe that she could dispute a debt verbally and a verification or judgment would necessarily be provided to her.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a)  Adjudging that FFG violated 15 U.S.C. § 1692g(a)(4);

b)  Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d)  Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e)  Awarding such other and further relief as the Court may deem just and proper.

### COUNT VI—VIOLATION OF 15 U.S.C. § 1692g(a)(4)
### MIDLAND FUNDING

86.     Ms. Harris repeats and re-alleges each and every factual allegation above.

87. FFG violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that a dispute of the debt, or any portion thereof, must be made in writing in order to require FFG to obtain verification of the alleged debt or a copy of a judgment against Ms. Harris and mail the same to her.

88. Midland Funding, by virtue of its status as a "debt collector" under the FDCPA, is vicariously liable for the actions of FFG, the debt collector it retained to collect the Debt from Ms. Harris on its behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that Midland Funding violated 15 U.S.C. § 1692g(a)(4);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law; and

e) Awarding such other and further relief as the Court may deem just and proper.

**COUNT VII—VIOLATION OF 15 U.S.C. § 1692g(a)(4)**
**MIDLAND CREDIT MANAGEMENT**

89. Ms. Harris repeats and re-alleges each and every factual allegation above.

90. FFG violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that a dispute of the debt, or any portion thereof, must be made in writing in order to require

FFG to obtain verification of the alleged debt or a copy of a judgment against Ms. Harris and mail the same to her.

91. Midland Credit Management, by virtue of its status as a "debt collector" under the FDCPA, is vicariously liable for the actions of FFG, the debt collector it retained to collect the Debt from Ms. Harris on its behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that Midland Credit Management violated 15 U.S.C. § 1692g(a)(4);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law;

e) Awarding such other and further relief as the Court may deem just and proper.

### COUNT VIII—VIOLATION OF 15 U.S.C. § 1692g(a)(4)
### ENCORE

92. Ms. Harris repeats and re-alleges each and every allegation above.

93. FFG violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey to Ms. Harris, in its initial communication or in writing within five days thereof, that a dispute of the debt, or any portion thereof, must be made in writing in order to require FFG to obtain verification of the alleged debt or a copy of a judgment against Ms. Harris and mail the same to her.

94. Encore likewise is vicariously liable for the actions of FFG, the debt collector that its subsidiaries Midland Funding and Midland Credit Management retained to collect the Debt from Ms. Harris on their behalf.

WHEREFORE, Ms. Harris prays for relief and judgment, as follows:

a) Adjudging that Encore violated 15 U.S.C. § 1692g(a)(4);

b) Awarding Ms. Harris statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Harris reasonable attorneys' fees ands costs incurred in this action;

d) Awarding Ms. Harris any pre-judgment and post-judgment interest as may be allowed under the law;

e) Awarding such other and further relief as the Court may deem just and proper.

### TRIAL BY JURY

95. Ms. Harris is entitled to and hereby demands a trial by jury.

Dated: This 13th day of March, 2013.

ATTORNEYS FOR PLAINTIFF
*Janaya Harris*

Respectfully submitted,

By: /s/Jeanne Lahiff_____
Jeanne Lahiff, Esq
NY Bar No. 2252435
***Weisberg & Meyers, LLC***
80 Broad Street, 5th Floor
New York, NY 10004
(888) 595-9111 ext. 511
(866) 842-3303 (fax)
JLahiff@attorneysforconsumers.com

*Please send correspondence to the address below:*

***Weisberg & Meyers, LLC***
Attorneys for Plaintiff
5025 N. Central Ave. #602
Phoenix, AZ 85012